UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELIZA PARHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 14-1613 (RJL) |
| | ) | |
| CIH PROPERTIES, INC. et al., | ) | **FILED** |
| | ) | |
| Defendants. | ) | SEP 0 8 2015 |
| | | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

MEMORANDUM OPINION
September 6, 2015 [#17]

Plaintiff Eliza Parham ("plaintiff") brings this action against CIH Properties, Inc. and Dupont Park Apartments Joint Venture ("defendants"), seeking damages for, inter alia, fraudulent misrepresentation and housing discrimination under various federal and local laws. *See generally* Am. Compl. [Dkt. #11]. Before this Court is defendant CIH Properties, Inc.'s ("defendant") Motion for Partial Summary Judgment [Dkt. #17] ("Def.'s Mot.").[1] Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, defendant's motion is GRANTED.

---

[1] This case was originally filed in the Superior Court for the District of Columbia against CIH Properties, Inc. and CIH Ventures, Inc. *See* Compl. [Dkt. #1-1]. However, plaintiff's Amended Complaint, which names as defendants CIH Properties Inc. and Dupont Park Apartments Joint Venture, is now the operative complaint in this case—it superseded the original complaint, rendering it without any legal effect. *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004); 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2015). Thus, plaintiff is deemed to have abandoned her action with regard to CIH Ventures, Inc. *See Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1101 (S.D. Cal. 2006) ("An amended complaint that drops a defendant named in the original complaint effectively dismisses that defendant from the action."). Therefore, although the defendant's motion purports to be

1

## BACKGROUND

For almost fifty years, plaintiff has resided in an apartment complex owned and managed by defendants. Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. ¶ 1 [Dkt. # 22] ("Pl.'s Opp'n"); Def.'s Statement of Undisputed Material Facts ¶ 1 [Dkt. # 17] ("Def.'s SOMF"). The case now before this Court arises from plaintiff's myriad complaints regarding the condition of her apartment unit and its location in the apartment complex. *See generally* Pl.'s Opp'n. Plaintiff's series of complaints begins with the harm she suffered, and the property damage that resulted from, a water leak in her apartment. *Id.* at ¶¶ 3-26. Specifically, in September 2011 the rental office requested access to plaintiff's unit to investigate a water leak potentially originating from the plumbing in her hallway closet or her bathroom. *Id.* at ¶¶ 3-4. Upon examination, plaintiff's daughter discovered that the closet was covered in mildew and black mold and that the ceiling was collapsing. *Id.* at ¶ 5. Making matters worse, the maintenance crew member sent to investigate the leak punched holes in the closet wall to inspect the sewage pipes, which were left open for several weeks. *Id.* at ¶¶ 6-10. Ultimately, it was determined that the leak did not originate in plaintiff's apartment but was, in fact, due to a faulty gutter leaning against the building. *Id.* at ¶¶ 13-14; Pl.'s Opp'n Exs. at 3[2] [Dkt. #22-1] ("Pl.'s Exs."). Plaintiff alleges that this ordeal resulted in damage to the property she stored in her closet, Pl.'s Opp'n ¶ 12, and that the presence of mold caused her and her daughter to suffer serious

---

filed on behalf of CIH Properties, Inc. *and* CIH Ventures, Inc., *see* Def.'s Mot. 1 n.1, the Court will treat the motion as if it were filed only on behalf of CIH Properties, Inc.
[2] This Court will reference the page numbers assigned in the docket entry caption for plaintiff's exhibits.

health problems, for which they each sought medical treatment, *id.* at ¶¶ 17, 23. She also claims, though the record does not corroborate, that she requested that they be moved to a *first-floor*, mold-free unit at that time. *Id.* at ¶ 51. Plaintiff's list of grievances continues by describing several features of her unit that she believes make it uninhabitable. These include that there is a "big gap" between the roof and the ceiling, that there is a "great opening" between her unit and that of her neighbor, and that the "critters come in from time to time." *Id.* at ¶ 50.

Beyond her complaints regarding the condition of her unit, plaintiff raises several issues regarding her unit's accessibility. *See id.* at ¶¶ 27-45. Plaintiff has had a handicapped parking tag since 2001, *id.* at ¶ 27, and has been confined to a wheelchair since 2008, *id.* at ¶ 30. Because plaintiff's apartment is on the second floor of a building that does not have an elevator, *id.* at ¶ 2, she requires the assistance of the D.C. Fire Department to enter and exit the building, *id.* at ¶ 30. In an attempt to remedy this difficult situation, on August 4, 2014, plaintiff sent a letter to defendants requesting that she be relocated to a handicapped-accessible, first-floor apartment. Pl.'s Exs. at 14. After a month without a response, plaintiff filed the instant case, stating claims for breach of contract, fraudulent misrepresentation, and violations of the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), the Rehabilitation Act ("RA"), and the D.C. Human Rights Act ("DCHRA"). *See generally* Am. Compl.

Subsequent to filing suit, plaintiff continued to discuss the possibility of moving into a first-floor apartment with defendants. On September 22, 2014, plaintiff delivered a follow-up letter to defendants reiterating her request for "the first floor equivalent unit as

3

[her] current apartment." Pl.'s Exs. at 15. One week later, defendants responded that they wished to accommodate plaintiff's request, but that no such units were available at that time. *Id.* at 18. They committed to notifying plaintiff when a two-bedroom ground-floor unit became available. *Id.* On October 4, 2014, plaintiff followed up once again, this time asking to be advised of all available two-bedroom, ADA-accessible, first-floor units. Pl.'s Exs. at 16. Several days later, on October 7, 2014, defendants notified plaintiff that a first-floor unit was available; however, it was not, and could not be modified to be, fully "ADA accessible." *Id.* at 19. Plaintiff never contacted defendants about moving into that first-floor unit. *Id.* at 20. After learning from plaintiff's counsel that plaintiff was interested in a first-floor unit with fewer steps, Def.'s Mot. Ex. 7 [Dkt. #17-7], on January 22, 2015 and February 10, 2015, defendants again offered plaintiff a first-floor unit, this time in a different building and with only four stairs. Pl.'s Exs. at 21, 25. Plaintiff rejected this offer, citing in her pleadings the unit's "remote" and "hilly" location as compared to her current unit and its situation in a "courtyard with dim lighting." Pl.'s Opp'n ¶¶ 38-42. On February 5, 2015, defendant CIH Properties, Inc. moved for summary judgment on plaintiff's fraudulent misrepresentation and discrimination claims. *See* Def.'s Mot. 1.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact to be decided

4

with respect to any essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. *See id.* at 323-24. In evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmovant, giving it the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant's opposition, however, may not rest upon the mere allegations or denials of the pleadings, but must be supported by affidavits or other competent evidence. *Celotex*, 477 U.S. at 324. Thus, by pointing to the absence of evidence sufficient to establish the existence of an element essential to the nonmovant's case, a moving party may succeed on summary judgment. *Id.* at 325.

## ANALYSIS

The facts material to this case are generally not in dispute; rather, defendant CIH Properties, Inc. moves for summary judgment arguing that the record simply does not contain evidence sufficient to establish the existence of the essential elements of fraudulent misrepresentation or discrimination. *See generally* Def.'s SOMF. I agree.

### A.   Fraudulent Misrepresentation

To prevail on a claim of fraudulent misrepresentation, plaintiff must prove five elements: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive, (5) with action taken in reliance upon the representation. *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980). In addition, plaintiff must show that she suffered some injury as a

with respect to any essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. *See id.* at 323-24. In evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmovant, giving it the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant's opposition, however, may not rest upon the mere allegations or denials of the pleadings, but must be supported by affidavits or other competent evidence. *Celotex*, 477 U.S. at 324. Thus, by pointing to the absence of evidence sufficient to establish the existence of an element essential to the nonmovant's case, a moving party may succeed on summary judgment. *Id.* at 325.

## ANALYSIS

The facts material to this case are generally not in dispute; rather, defendant CIH Properties, Inc. moves for summary judgment arguing that the record simply does not contain evidence sufficient to establish the existence of the essential elements of fraudulent misrepresentation or discrimination. *See generally* Def.'s SOMF. I agree.

**A.   Fraudulent Misrepresentation**

To prevail on a claim of fraudulent misrepresentation, plaintiff must prove five elements: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with the intent to deceive, (5) with action taken in reliance upon the representation. *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980). In addition, plaintiff must show that she suffered some injury as a

consequence of her reliance on the misrepresentation. *Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998). In order to survive summary judgment on this claim, plaintiff must point to competent evidence to establish each of these essential elements. *See Celotex*, 477 U.S. at 322. Unfortunately for plaintiff, she simply has not done so.

With respect to the first element, a false representation, plaintiff has repeatedly alleged that defendants misrepresented that her apartment is habitable. Am. Compl. ¶ 38; Pl.'s Opp'n ¶ 50. While plaintiff alleges various facts that, if proven, may support the falsity of such a statement—including that there are "gaps" between the roof and ceiling, a "great opening" between her unit and her neighbor, that "critters" occasionally enter her apartment, and that her unit has mold—plaintiff does not point to any evidence in the record to suggest that such a statement was, in fact, made. In lieu of identifying who represented to her that her unit is habitable, when such representation was made, or what specifically was said, in her opposition to defendant's motion plaintiff simply restates verbatim the thread-bare allegations contained in her amended complaint. *See* Pl.'s Opp'n ¶¶ 50-53. Simply alleging a misrepresentation, without any evidence, is insufficient to defeat summary judgment. *See Celotex*, 477 U.S. at 324. Moreover, with respect to elements three and four, knowledge of falsity and intent to deceive, without knowing who is alleged to have made the allegedly false statement, it is impossible to evaluate whether that person did so with knowledge of the statement's falsity or with the intent to deceive. Indeed, plaintiff has not alleged, much less provided evidence tending to demonstrate, that anyone intended to deceive her. Finally, even assuming that a false representation regarding the habitability of her apartment was made, plaintiff has wholly

failed to describe how she acted in reliance upon that statement to her detriment, as required by the fifth element.

Because plaintiff has not offered evidence to establish the existence of the essential elements of fraudulent misrepresentation, defendant is entitled to judgment in its favor on this count as a matter of law.

**B.     Discrimination Claims**

Plaintiff advances her FHA, ADA, RA, and DCHRA discrimination claims on the theory that defendants failed to reasonably accommodate her mobility disability by refusing her repeated requests to move her into an ADA-accessible, first-floor apartment. *See* Pl.'s Opp'n ¶¶ 30-45. As a preliminary matter, this Court notes that the ADA is not applicable in this case. Title III of the ADA—the provision relevant to plaintiff's failure to accommodate claim—prohibits discrimination in any "place of public accommodation," 42 U.S.C. § 12182(a), which is defined to include, inter alia, "an inn, hotel, motel, or other place of lodging." 42 U.S.C. § 12181(7)(A). A number of courts have observed that private apartment complexes do not qualify as "public accommodations" for purposes of the ADA, even if they offer publicly subsidized housing. *Indep. Housing Servs. of San Francisco v. Fillmore Center Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (finding that the legislative history of the ADA clarifies that "other place of lodging" does not include residential facilities); *accord Hardaway v. Equity Residential Mgmt., LLC*, No. DKC 11-1924, 2012 WL 3903489, at *5 (D. Md. Sept. 6, 2012); *Reid v. Zackenbaum*, No. 05-CV-1569 FB, 2005 WL

1993394, at *4 (E.D.N.Y. Aug.17, 2005). I agree and therefore find that plaintiff does not have a cause of action for failure to accommodate under the ADA.[3]

The remaining discrimination claims can be treated collectively because the FHA, RA, and DCHRA are generally interpreted to be coextensive with regards to the requirement to reasonably accommodate.[4] *See, e.g., Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) (interpreting the language of the DCHRA consistent with interpretations of federal antidiscrimination laws); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1148-49 (9th Cir. 2003) (noting that the court ordinarily looks to RA and ADA case law in interpreting the FHA reasonable accommodation requirement); *Erdman v. City of Fort Atkinson*, 84 F.3d 960, 962 (7th Cir. 1996) (recognizing that the FHA reasonable accommodation requirement is most often interpreted by analogy to the same phrase in the RA). Thus, for purposes of this analysis, the reasonable accommodation provisions of the RA and DCHRA are construed under the FHA legal standards.

---

[3] Whether or not the ADA is applicable in this case makes no practical difference. Title III of the ADA is interpreted to impose the same obligations as the FHA and RA. *See, e.g., Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003) (observing that the requirements for showing a failure to reasonably accommodate are the same under the ADA and the FHA); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) (noting that there is "no significant difference in the analysis or rights and obligations created by" the ADA and RA). As discussed, plaintiff has failed to point to evidence sufficient to sustain her claims under the FHA and the RA. Such failure would similarly render deficient her ADA claim.

[4] The FHA makes housing discrimination unlawful, *see* 42 U.S.C. § 3604(f)(1)-(2), and provides that "discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C. § 3604(f)(3)(B). The RA prohibits discrimination solely on the basis of disability from any "program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a), and obligates the provision of reasonable accommodations, *see Scarborough v. Natsios*, 190 F. Supp. 2d 5, 18-19 (D.D.C. 2002). The DCHRA prohibits landlords from discriminating against persons with disabilities and includes in its definition of "unlawful discrimination" a "refusal to make reasonable accommodations" for disabled tenants. D.C. Code § 2-1402.21(d).

To succeed on a failure to accommodate claim under the FHA, plaintiff must show: (1) that she had a handicap within the meaning of the statute; (2) that defendants knew or reasonably should have known of the handicap; (3) that an accommodation may be necessary to afford her an equal opportunity to use and enjoy the dwelling; and (4) that defendants refused to make the requested accommodation. *United States v. District of Columbia*, 538 F. Supp. 2d 211, 217-18 (D.D.C. 2008). As these elements suggest, the "underlying assumption of any reasonable accommodation claim is that the plaintiff . . . has requested an accommodation which the defendant . . . has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). Moreover, the request for an accommodation is not without limit—only *reasonable* accommodations must be made, *see, e.g., Giebeler* 343 F.3d at 1157 (describing reasonable accommodation as those that do not impose undue financial or administrative burden), and a tenant is not entitled to the exact accommodation of its choice, *see Chahil v. Episcopal Church Home Friendship*, No. 10-cv-418 (RLW), 2012 WL 3886950, at *4 (D.D.C. Sept. 7, 2012) ("[A] tenant is not entitled to each and every accommodation that he prefers.").

Defendant does not dispute that plaintiff is disabled for the purposes of the FHA, that it knew of this disability, or that an accommodation for her disability may be necessary. Rather defendant contends that plaintiff has not made a request for a reasonable accommodation as required by the law. Def.'s Mot. 6. Plaintiff counters that she requested accommodations for her disabilities first in 2011, Pl.'s Opp'n ¶¶ 57, 60-61, and again through a series of letters in 2014, *id.* at ¶¶ 57, 64-65. While plaintiff acknowledges that defendants offered her two different first-floor units in response to her

2014 requests, she maintains that the second apartment offered was not really an "accommodation" because of the unit's "remote" and "hilly" location as compared to her current unit and its situation in a "courtyard with dim lighting." Pl.'s Opp'n ¶¶ 38-42. Plaintiff further suggests that a unit on D Street or the unit currently used as the rental office should have been offered to her. Pl.'s Opp'n ¶¶ 44-45, 70, 73.

Despite plaintiff's protestations, I agree with defendant that the record simply does not contain evidence sufficient for a jury to find that defendant refused to comply with a request for a reasonable accommodation. To begin with, the record reveals that any request to move apartments in 2011 was related to the presence of mold in plaintiff's apartment and the health problems she may have suffered as a result. *See* Pl.'s Exs. at 9, 12. There is nothing in the record to indicate that plaintiff was requesting a move based on her disability, and therefore defendant cannot be held liable under the FHA, RA, or DCHRA for any inaction at that time.

By contrast, the record clearly demonstrates that plaintiff made a request for an accommodation in the form of an ADA-accessible, first-floor unit in 2014. *See* Pl.'s Exs. at 14-17; *Thompson v. Rice*, 422 F. Supp. 2d 158, 176 (D.D.C. 2006) ("The request for accommodation does not have to be formal . . . but the employer must be alerted to the condition and the need for accommodation."). However, plaintiff has not shown that defendant refused to make a *reasonable* accommodation for her once she made that request. In fact, defendant repeatedly offered to do just that and continued to work with plaintiff in good faith even after her request proved to be a moving target. On October 7, 2014 defendants offered to move plaintiff into a first-floor unit; however, they noted that,

as with all apartments in plaintiff's complex, it was not, and could not be modified to be, fully "ADA accessible." Pl.'s Exs. at 19. Plaintiff never responded to this offer. *Id.* at 20. After learning from plaintiff's counsel that plaintiff was interested in a first-floor unit with fewer steps, Def.'s Mot. Ex. 7, on January 22, 2015 and February 10, 2015, defendants offered plaintiff the only available first-floor unit, which has one step to enter the building and three steps to the first floor landing. Pl.'s Exs. at 21, 25. Plaintiff did not accept this offer, citing the unit's "remote" and "hilly" location and its situation in a "courtyard with dim lighting," Pl.'s Opp'n ¶¶ 38-42, and suggesting instead that she be relocated to a D Street apartment or the unit currently used as the rental office. Pl.'s Opp'n ¶¶ 44-45, 70, 73. As defendant notes, however, the first-floor unit plaintiff rejected has the "identical number of steps" as the D Street units she now seeks. Def.'s Reply in Supp. of Mot. for Partial Summ. J. 4 [Dkt. #24].

Unfortunately for plaintiff, the law does not entitle her to get exactly what she wants, but only what is reasonable. *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 264-65 (S.D.N.Y. 2014) (noting that a failure to provide an apartment in the exact location desired by the plaintiff is not a denial of a request for an accommodation for an apartment with fewer steps). Here, defendants' good-faith offers to relocate plaintiff to a first-floor unit, exactly as plaintiff originally requested, satisfied their duty to reasonably accommodate plaintiff's disability. Defendants are not required to undertake the financial and administrative burden associated with moving plaintiff into a D Street apartment that is currently occupied or relocating their rental office so that plaintiff can occupy that space. In the end, the difficult living situation plaintiff now finds herself in is

not a product of defendants' refusal to comply with the law, but her own refusal to accept the reasonable accommodation defendants offered. For that, the law affords no remedy.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Partial Summary Judgment is GRANTED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge